1  Adam H. Springel, Esq., CA Bar No. 166308
   aspringel@springelfink.com
2  Stephanie L. Millea, Esq., CA Bar No. 275925
   smillea@springelfink.com
3  SPRINGEL & FINK LLP
   535 Anton Boulevard, 9th Floor
4  Costa Mesa, California 92626
   Telephone: (714) 957-5742
5  Facsimile: (714) 957-5762

6  Richard H. Silberberg, Esq. (to be admitted pro hac vice)
   Silberberg.richard@dorsey.com
7  DORSEY & WHITNEY LLP
   51 West 52nd Street
8  New York, New York 10019
   Telephone: (212) 415-9231
9  Facsimile: (212) 415-9284

10 Robert Mahler, Esq., (to be admitted pro hac vice)
   mahler.bob@dorsey.com
11 James Howard, Esq., (to be admitted pro hac vice)
   howard.james@dorsey.com
12 DORSEY & WHITNEY LLP
   701 Fifth Avenue, Suite 6100
13 Seattle, Washington 98104
   Telephone: (206) 903-8800
14 Facsimile: (206) 903-8820

15

16 Attorneys for Plaintiff and Proposed Class

17

18               UNITED STATES DISTRICT COURT

19               CENTRAL DISTRICT OF CALIFORNIA

                     SACV13-0477 JVS (RNBx)

20 ANGELA EBNER,                    Case No.

21          Plaintiff,

22 v.                              CLASS ACTION COMPLAINT

                                   DEMAND FOR JURY TRIAL
23 FRESH INC., A DELAWARE
   CORPORATION,
24
            Defendant.
25

26      Plaintiff, Angela Ebner ("Plaintiff"), by and through her undersigned

27 counsel, on behalf of herself and all others similarly situated, based on her personal

28 knowledge and the investigation of counsel, hereby alleges the following:

                      CLASS ACTION COMPLAINT
                              -1-

1

## JURISDICTION AND VENUE

2    1.    This Court has jurisdiction over this matter under the Class Action

3  Fairness Act, 28 U.S.C. § 1332(d)(2).  Plaintiff and Defendant are citizens of

4  different states.  The amount in controversy exceeds $5 million and there are more

5  than 100 putative Class members.

6    2.    This Court has personal jurisdiction over Defendant because

7  Defendant is licensed to do business in California or otherwise conducts business in

8  California.

9    3.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)

10 because unlawful practices are alleged to have been committed in this District, the

11 property involved in Plaintiff's claims is situated in this District, Plaintiff resides in

12 this District, and Defendant regularly conducts business in this District.

13   4.    Intradistrict Assignment:  Assignment to the Western Division of this

14 District is appropriate because Defendant regularly conducts business in the area

15 encompassed by the Western Division, including the operation of all three of its

16 local retail stores located within the Western Division, and because many putative

17 Class members reside in the area encompassed by the Western Division.

18 Intradistrict assignment to the Southern Division may also be appropriate because

19 the class representative resides in the Southern Division.

20

## NATURE OF THE ACTION

21   5.    This is an action against FRESH, INC., a Delaware corporation,

22 ("Fresh" or "Defendant") for misleading consumers about the quantity of product

23 contained in the packages of its Sugar lip treatment product line that is sold is

24 various sizes and tints ("Sugar").

25   6.    The lawsuit is brought as a nationwide class action under the state

26 consumer protection laws that protect Sugar's consumers aka "the Class."  As to

27 Ms. Ebner specifically, and all other consumers similarly situated, the lawsuit is

28

brought under the California False Advertising Act, *California Business and Professions Code* §§ 17500, et. seq.; California Consumer Legal Remedies Act ("CLRA"), *California Civil Code*, §§ 1750, et seq.; the California Unfair Competition Law ("UCL"), *California Business and Professions Code* §§ 17200, et. seq.; and for unjust enrichment. Should subclasses or other amendments be required by the Court for nationwide certification, Plaintiff reserves the right to seek leave to amend the Complaint to create such subclasses.

7.    Since Sugar was first produced and sold (the "Class Period"), Defendant engaged in a packaging process, labeling procedure, and marketing campaign to mislead and deceive consumers about the accessible quantity of Sugar Lip Treatment. While Plaintiff's claim accrued within the past four (4) years, the claims of the Class go back to the time Sugar was first sold to consumers. Throughout the entire time period that Sugar has been sold, Defendant's packaging process, labeling procedure, and marketing campaign has resulted in a pattern of reasonably frequent and similar acts justifying treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that Defendant's wrongful conduct occurred partially outside and partially inside the limitations period as to the claims of some members of the Class. At a minimum, Defendant's packaging process, labeling procedure, and marketing campaign has resulted in a continuous accrual of claims applicable to the Class due to Defendant's wrongful conduct creating a continuing or recurring obligation to the Class because separate causes of action accrued each time a wrongful act occurred, thereby triggering a new limitations period with each sale of Sugar.

8.    The quantity of lip balm product claimed by Defendant on the various Sugar packages is false, deceptive, and misleading. Specifically, with respect to its original product line and derivatives of that line, Defendant has packaged Sugar in individual dispenser tubes indicating that each tube contains 4.3 grams (.15 ounce) of the lip balm product, when in truth and in fact, only approximately 3.3 grams of

1   product (about 75% of the stated amount) is accessible to a consumer using any
2   reasonable means of extraction given the design of the dispensing tube.

3       9.   The design of the dispensing tube calls for the product to be applied
4   directly to the lips, but this expected and intended application method only allows
5   the consumer to access 3.3 grams of product before the consumer hits a hard plastic
6   stop preventing further application of the product as expected and intended by the
7   design. Thus, the design prevents the consumer from using 1.0 gram of product—
8   or 25%—for every 4.3 grams purchased. Thus, Defendant's claims of quantity are
9   false, deceptive, and misleading.

10       10.   Compounding the deception, the original product line and derivatives
11   of that line are packaged in oversized dispenser tubes with false weighted bottoms,
12   which brings the total weight of the original Sugar lip balm tube to approximately
13   29 grams, thereby making the product appear to contain a far greater quantity of
14   product than is actually reasonably available to the consumer inside each tube.

15       11.   Defendant also sells "mini" Sugar lip balm products in smaller
16   packages. The quantity of lip balm product claimed by Defendant on these "mini"
17   packages is also false, deceptive, and misleading. Specifically, Defendant has
18   packaged "mini" products in individual dispenser tubes indicating that each tube
19   contains 2.2 grams (.08 ounce) of the lip balm product, when in truth and fact, only
20   approximately 1.65 grams of product (about 75% of the state amount) is accessible
21   to a consumer using any reasonable means of extraction given the design of the
22   dispensing tube. Like the original package, the design of the dispensing tube for
23   the "mini" Sugar products calls for the product to be applied directly to the lips, but
24   this expected application method only allows the consumer to access 1.65 grams of
25   product before a  hard plastic stop prevents further application of the product as
26   purposefully designed.

27       12.   Defendant was motivated to deceive and mislead consumers in order
28   to increase profits by inducing consumers to buy its product rather than those of its

1   competitors, and to cause consumers to run out of the product sooner and buy it
2   more frequently than would occur if the quantity of the product stated on the
3   package actually was reasonably accessible as intended by the package, *i.e.*, the
4   design of the dispensing tube. Through its deceits, Defendant was able to command
5   a premium price by misleading consumers about the quantity of product available
6   in each Sugar container.

7   .13.   The United States Food and Drug Administration, the federal
8   government's central regulatory body for cosmetic products and labeling, states that
9   "proper labeling is an important aspect of putting a cosmetic product on the market.
10  [The laws] are intended to protect consumers from...deceptive practices and to help
11  consumers make informed decisions regarding product purchase."

12  14.   As a result of Defendant's unlawful, unfair, deceptive, untrue and
13  misleading practices, Plaintiff and other Class members were deprived of the value
14  of the product that they purchased.  Had Plaintiff been aware that the containers of
15  Defendant's product that she purchased contained significantly less of accessible
16  and available product than its untrue package label and deceptively oversized
17  packaging led her to believe, she would not have paid the same premium price for
18  the product as she only received the benefit of approximately 75% of what she
19  actually paid for the product.  As a result of Defendant's unlawful, unfair,
20  deceptive, untrue and misleading packaging and labeling, Plaintiff suffered
21  financial loss and injury.

22  15.   Plaintiff brings this action on her own behalf and on behalf of other
23  Class members to stop Defendant's unlawful, unfair, deceptive, untrue and
24  misleading practices, and to obtain all other remedies available under applicable
25  law, as set forth below.

26  **PARTIES**

27  16.   Plaintiff, Angela Ebner ("Plaintiff"), resides in Ladera Ranch,
28  California.  At various times during the Class period and at various locations in the

1  Central District of California, Plaintiff purchased Defendant's Sugar Lip Treatment
2  lip balm product.  She appears individually and on behalf of all those similarly
3  situated as described herein.  She asserts all claims in this case on behalf of the
4  Class defined below.

5       17.    Defendant, Fresh, is a subsidiary of LVMH Moet Hennessy Louis
6  Vuitton, Inc.  Fresh is a Delaware corporation with its principal place of business in
7  Boston, Massachusetts, and conducts business throughout the United States,
8  including California.  Fresh is in the business of manufacturing cosmetic and skin
9  care products, including Sugar Lip Treatment.

10  **SUBSTANTIVE ALLEGATIONS**

11       18.    Sugar Lip Treatment is a Fresh product that, according to the
12  company's website, is designed to "provide 6 hours of significant moisture for soft,
13  supple, and youthful lips." *See* www.fresh.com/skincare/lip-care-skincare/sugar-
14  lip-treatment-spf-15.  Fresh has five retail store locations in California – one in San
15  Francisco, one in Costa Mesa, two in Los Angeles, and one in Santa Monica. Other
16  U.S. retail stores are located in New York, Nevada, Texas, and Massachusetts. In
17  addition, Fresh products, including Sugar Lip Treatment, are sold at other retail
18  stores throughout California and the United States, including Neiman Marcus and
19  Sephora. Sugar Lip Treatment is also marketed and sold throughout the United
20  States via internet sales on Defendant's website, fresh.com, as well as on websites
21  such as sephora.com and amazon.com.

22       19.    Sugar now comes in a variety of "flavors," tints and weights and is
23  sold in tubes that dispense the product.  The original Sugar Lip Treatment tubes
24  containing the product are marketed and sold inside cardboard box containers.
25  Each tube and the cardboard box in which it comes bears a label prominently
26  displayed on the front stating that the weight of the lip balm product contained
27  within the tube is "4.3g e 0.15 oz."  A representative picture of a Sugar tube and
28  box appears below:

1
2
3
4
5
6
7
8
9
10



11    20.    Defendant has engaged in a widespread marketing and advertising

12  campaign to portray Sugar Lip Treatment dispenser tubes as having nearly twenty-

13  five percent (25%) more product available for application as expected and intended

14  by the consumer than is actually the case.  In fact, as shown below, only 3.3 grams

15  of Sugar Lip Treatment is available to the consumer, rather than the 4.3 grams

16  indicated on the label of the original product's tubes and boxes.  Each Sugar Lip

17  Treatment is dispensed in a tube containing a screw mechanism that pushes the lip

18  balm product up from the bottom of the tube to the top so a consumer can apply the

19  balm by pressing it directly to his or her lips from the top of the tube.  The screw

20  mechanism on each Sugar Lip Treatment tube contains a solid plastic mechanical

21  stop device that prevents approximately 25% of the lip treatment contained within

22  the tube from being accessible to the consumer in its intended manner or any other

23  reasonable manner.  Representative pictures appear below:

24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





21.    Likewise, as shown below, only 1.65 grams of "mini" Sugar Lip Treatment is available to the consumer, rather than the 2.2 grams indicated on the label of the product's tubes.  Just as the original product, each "mini" Sugar Lip Treatment is dispensed in a tube containing a screw mechanism that pushes the lip balm product up from the bottom of the tube to the top so a consumer can apply the balm by pressing it directly to his or her lips from the top of the tube.  The screw mechanism on each Sugar Lip Treatment tube contains a solid plastic mechanical stop device that prevents approximately 25% of the lip treatment contained within the tube from being accessible to the consumer in its intended manner or any other reasonable manner.  Representative pictures appear below:



22.     Compounding the deception perpetrated by Defendant's false labeling of Sugar tubes and boxes, Defendant markets Sugar in vastly oversized tubes and boxes in order to make them appear to a reasonable consumer as if they contain a far larger quantity of lip balm product than they actually contain.  A representative picture appears below:



23.     Furthermore, as shown below, each tube of Sugar Lip Treatment contains a metallic weight at the bottom of the dispenser mechanism, giving the false, deceptive, and misleading impression to the consumer that the tube contains a greater quantity of product inside.

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15



16
17
18
19
20
21
22

23    24.    Defendant has publicly congratulated itself for these deceptive

24    practices, stating that: "Fresh, whose natural products respond to high-growth

25    consumer trend, benefited from the work to renovate its packaging." See

26    www.lvmh. com/uploads/assets/Com-fi/Documents/en/Reports/

27    Report%202007/LVMH2007-PerfumesCosmetics.pdf.  Even Fresh's founders, Lev

28

Glazman and Alina Roytberg, have given videotaped interviews explaining the importance of their packaging being an integral part of Defendant's successful sales history (*e.g.* www.youtube.com/watch?v=a7aD0J2REyI;

www.youtube.com/watch?v=Tfjpn-mLswY; and

http://www.youtube.com/watch?v=qAHBwwrAT1s).

25. Sugar sells in retail establishments and on the internet at prices ranging from $22.50 to $25 per unit, for what is advertised to be .15 ounces (or 4.3 grams) of lip balm, when in fact only seventy-five percent (75%) of the stated quantity of the product is actually accessible to the consumer. In contrast, other lip balms that also sell their products in tubes make all of their products' advertised product weight accessible to the consumer.

26. Over the past four (4) years, Plaintiff purchased Defendant's Sugar Lip Treatment at various locations in Southern California. At the time of those purchases, the product was displayed in packaging that was false, deceptive, and misleading.

27. Due to Defendant's deceptive and misleading packaging, Plaintiff, at the time of her purchase of Sugar Lip Treatment, was unaware that the packaging was false, deceptive, and misleading. As a result, Plaintiff mistakenly believed that the entire quantity of product advertised on the package was reasonably accessible for her use when, in fact, it was not.

28. As a result of the Defendant's unlawful conduct, Plaintiff, like other members of the Class, was deprived of the value of the product that she purchased. As a result of Defendant's unlawful conduct, members of the public were likely to be deceived. Had Plaintiff known that the product purchased did not allow for her to access the quantity of product advertised, she would not have paid the premium price. Plaintiff and members of the Class were misled and deceived to believe that they were purchasing an equivalent amount of lip balm product as they would receive if they purchased products from Defendant's competitors. Plaintiff and

1  members of the Class detrimentally relied on Defendant's deceptive packaging,

2  which resulted in financial loss and injury for Plaintiff and the Class.

3      29.    In combination with the misleading claims made on its packaging,

4  Defendant has conducted multi-million-dollar marketing and advertising campaigns

5  that have further misled and deceived members of the Class to believe that they are

6  purchasing an equivalent amount of lip balm product as they would receive if they

7  purchased products from Defendant's competitors.

8                      **CLASS ACTION ALLEGATIONS**

9      30.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of

10 Civil Procedure, on behalf of herself and the following proposed Class: *The Class*:

11 All persons who purchased Defendant's Sugar Lip Treatment throughout the United

12 States and within California at any time, including through the date of final

13 judgment in this lawsuit. The proposed Class is ascertainable from objective

14 criteria. Excluded from the Class are officers and directors of Defendant, members

15 of the immediate families of the officers and directors of Defendant, and its legal

16 representatives, heirs, successors or assigns, and any entity in which they have or

17 have had a controlling interest.

18     31.    *Numerosity*: The exact number of members of the proposed Class is

19 unknown and is not available to Plaintiff at this time, but individual joinder in this

20 case is impracticable. Upon information and belief, Plaintiff alleges that there are

21 twenty-three (23) Sephora stores located in California where Fresh is sold, *see*

22 http://www.store-locator.info/sephora/state/california, with numerous additional

23 stores throughout the country, all of which prominently display and sell Sugar Lip

24 Treatment. There are five (5) Fresh retail store locations in California, *see*

25 http://www.fresh.com/content/StoreLocations, all of which prominently display and

26 sell Sugar Lip Treatment, with other stores in New York, Nevada, Texas, and

27 Massachusetts. There are thirteen (13) Neiman Marcus department stores in

28 California, *see http://www.neimanmarcus.com/stores/index.jsp*, all of which

1    prominently display and sell Sugar Lip Treatment, with additional stores

2    throughout the country.  In addition, Sugar Lip Treatment is widely available and

3    sold to consumers in California and throughout the United States through various

4    internet sites such as amazon.com, sephora.com, and fresh.com.  Given Sugar Lip

5    Treatment's widespread availability to consumers in California and throughout the

6    United States, and Defendant's widespread and highly-effective marketing of the

7    product, Plaintiff believes there are tens of thousands, if not hundreds of thousands,

8    of Class members just in California, with even a greater number nationwide, and

9    that joinder of all members of the Class is impracticable.[1]

10       32.    *Commonality*:  Numerous questions of law and fact are common to the

11   claims of Plaintiff and members of the proposed Class.  These common questions

12   of law and fact exist as to all members of the Class and predominate over questions

13   affecting only individual members of the Class.  These common legal and factual

14   questions include, but are not limited to, the following:

15              a.    Whether Defendant's label on Sugar Lip Treatment tubes and

16                    boxes indicating that the tubes contain 4.3 grams of lip balm

17                    product constitutes false, misleading, and/or deceptive

18                    statements or representations, under *California Business and*

19                    *Professions Code* § 17500;

20              b.    Whether Defendant's label on its more recent "mini" Sugar Lip

21                    Treatment tubes indicating that the tubes contain 2.2 grams of

22                    lip balm product constitutes false, misleading, and/or deceptive

23                    statements or representations, *under California Business and*

24                    *Professions Code* § 17500;

25

26

27   [1] By way of illustration, if each of the retail outlets and internet sites identified above sold to a
     California consumer just one Sugar Lip Treatment per day during the past four years (and
28   assuming no repeat customers), Class membership would consist of 64,240 individuals.

c.   Whether Defendant violated *California Business and Professions Code* §§ 17200, et seq. by distributing Sugar Lip Treatment with false, misleading and/or deceptive labels and packaging;

d.   Whether Defendant violated the CLRA, *California Civil Code* §1750, *et seq.* by distributing Sugar Lip Treatment with false, misleading and/or deceptive labels and packaging;

e.   Whether Defendant's labeling, marketing, advertising and sale of Sugar Lip Treatment tubes as containing 4.3 grams (.15 ounces) and "mini" Sugar Lip Treatment tubes as containing 2.2 grams (.08 ounces) of product constitutes an unfair or deceptive consumer sales practice;

f.   Whether the tube in which Defendant packages and distributes Sugar Lip Treatment for sale, which enables a consumer to extract only seventy-five percent (75%) of the tube's contents, contains "nonfunctional slack fill" within the meaning of *California Business and Professions Code* § 12606(b);

g.   Whether Defendant's packaging of its 4.3 gram tube of Sugar Lip Treatment and "mini" Sugar Lip Treatment tubes containing 2.2 grams (.08 ounces) is deceptive and likely to deceive reasonable consumers into believing that the entire stated contents of the tube is accessible and available for use by the consumer; and

h.   Whether Plaintiff and Class members sustained injury and damages resulting from Defendant's conduct and, if so, the proper measure of damages, restitution, equitable, or other relief, and the amount and nature of such relief.

33. _Typicality_: Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased Defendant's Sugar Lip Treatment product in a typical consumer setting during the Class period and sustained damages from Defendant's wrongful conduct. Plaintiff purchased Sugar Lip Treatment in a tube that was falsely, misleadingly and deceptively labeled and packaged to indicate that it contained 4.3 grams of product. Defendant also sells the product in different tubes of lesser weight that suffer from the same misleading properties of the same proportion. Plaintiff's claims rest on the same legal theories as those of the Class; namely, proof that the Sugar Lip Treatment came in a box and tube, each of which indicated that the tube contained a stated quantity of lip balm, when in fact, only approximately 75% of the stated quantity was accessible; that the tubes and boxes in which the product is marketed are oversized with a metallic weight in a hollow bottom, giving the impression that they contain far more product than is actually accessible and available in the tube; that twenty-five percent (25%) of the product is not accessible due to the nonfunctional slack fill created by the tube mechanism; and that these false, misleading and deceptive practices violate the CLRA and the UCL and unjustly enriched Defendant. The effort that Plaintiff undertakes to pursue her own claim will significantly benefit the Class members because of the identical nature of the issues involved.

34. _Adequate Representation_: Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class.

35. _Predominance and Superiority_: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

36. The prosecution of separate actions by members of the Class would also create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from

1  performing the challenged acts, whereas another might not.  Additionally,

2  individual actions could be dispositive of the interests of the Class even though

3  certain Class members might not be parties to such actions.  Moreover, there may

4  be Class members who are unlikely to join or bring their own actions due to, among

5  other things, their reluctance to spend large sums of money on attorneys' fees and

6  litigation costs for what may ultimately prove to be a relatively modest individual

7  recovery.  Given the modest amount of damages sustained by any individual Class

8  member, few, if any, Class members could or would sustain the economic burden

9  of pursuing individual remedies for Defendant's wrongful conduct.  Furthermore,

10  even if individual Class members were able to sustain such a burden, individual

11  litigation by hundreds or thousands of aggrieved consumers, alleging identical facts

12  and violations of the same laws, would be an inefficient use of judicial resources.

13  Class action certification will provide economies of scale, eliminate the risk of

14  inconsistent judgments, and provide comprehensive and uniform supervision by a

15  single court.

16      37.    Class action certification is warranted under Fed. R. Civ. P.

17  23(b)(1)(A) because the prosecution of separate actions by individual members of

18  the Class would create a risk of inconsistent or varying adjudications with respect

19  to individual members of the Class, which would produce incompatible standards

20  of conduct for Defendant.

21      38.    Class action certification is also warranted under Fed. R. Civ. P.

22  23(b)(1)(B) because the prosecution of separate actions by individual members of

23  the Class would create a risk of adjudications with respect to individual members of

24  the Class which would, as a practical matter, be dispositive of the interests of the

25  other members not parties to the adjudications or substantially impair or impede

26  their ability to protect their interests.

27      39.    Class action certification is also warranted under Fed. R. Civ. P.

28  23(b)(2) because Defendant has acted or refused to act on grounds generally

1  applicable to the Class, thereby making appropriate final injunctive relief with

2  respect to the Class as a whole.

3      40.   Class action certification is also warranted under Fed. R. Civ. P.

4  23(b)(3) because questions of law or fact common to the members of the Class

5  predominate over any questions affecting only individual members, and a Class

6  action is superior to other available remedies for the fair and efficient adjudication

7  of this controversy.

8  **CAUSES OF ACTION**

9  **FIRST CAUSE OF ACTION**

10

11 **False Advertising**
**In Violation of the California Business & Professions Code § 17500, et seq.**

12

13     41.   Plaintiff repeats each and every allegation contained in the paragraphs
above and incorporates such allegations by reference herein.

14

15     42.   Defendant made, or caused to be made, representations to the public
which were untrue and misleading. Said untrue or misleading advertisements and

16

17 statements, which are unlawful under sections 17500 and § 17500.5 of the Business
& Professions Code, included, but were not limited to, advertising and packaging of

18

19 products in tubes that falsely labeled and represented the quantity of accessible lip
balm.

20

21     43.   The representations and statements made by Defendant, as set forth in
the paragraphs and as demonstrated in the photographs above, were untrue and

22

23 misleading when made, and were known, or by exercise of reasonable care should
have been known, by Defendant to be untrue and misleading.

24

25     44.   As a result of the above-stated conduct, on behalf of the Class,
Plaintiff seeks injunctive relief, restitution, disgorgement of ill-gotten gains,

26

27 attorneys' fees, and all other remedies and relief that may be permitted by law and
equity.

28

1

## SECOND CAUSE OF ACTION

2

### Unfair and Deceptive Acts and Practices,
### In Violation of the California Consumers Legal Remedies Act § 1750, et seq.

3

4

45.     Plaintiff repeats each and every allegation contained in the paragraphs

5

above and incorporates such allegations by reference herein.

6

46.     This cause of action is brought pursuant to the CLRA.

7

47.     Plaintiff and members of the Class are "consumers," as that term is

8

9

defined by *California Civil Code* section 1761(d), because they bought Sugar Lip

10

Treatment for personal, family, or household purposes. Defendants sold to Plaintiff

11

and other Class members its Sugar Lip Treatment products, which are goods within

the meaning of *California Civil Code* section 1761(a).

12

48.     Defendant is a "person" as defined by *California Civil Code* section

13

1761(c), because it is a corporation.

14

49.     Plaintiff, members of the Class, and Defendant have engaged in

15

"transactions," as that term is defined by *California Civil Code* section 1761(e),

16

because Plaintiff and the proposed Class members paid money in exchange for

17

Defendant's Sugar Lip Treatment products.

18

50.     The conduct alleged in this Complaint constitutes unfair methods of

19

competition and unfair and deceptive acts and practices for purposes of the CLRA,

20

and the conduct was undertaken by Defendant in transactions intended to result in,

21

and which did result in, the sale of goods to consumers.

22

51.     As more fully described above, Plaintiff and members of the Class

23

purchased Defendant's product in reliance upon Defendant's false, deceptive, and

24

misleading representations about the quantity of accessible and available product

25

contained in its packages of Sugar Lip Treatment.

26

27

28

52. By engaging in such misconduct, Defendant has violated *California Civil Code* sections 1770(a)(5) and (a)(9). Defendant knew, or should have known, that its misrepresentations were unsubstantiated, false, and misleading.

53. Specifically, Defendant violated, and continues to violate, Section 1770(a)(5) of the CLRA by representing, through deceptive packaging that the Sugar Lip Treatment tubes contained a quantity of lip balm that was accessible to the consumer when, in fact, such a quantity was not accessible.

54. Specifically, Defendant violated, and continues to violate, Section 1770(a)(9) of the CLRA by advertising Sugar Lip Treatment as containing a stated quantity of usable product with the intent not to sell as advertised.

55. Pursuant to CLRA § 1782, Plaintiff, through counsel, provided written notice to Defendant of the asserted violations of CLRA § 1770 and demanded that Defendant rectify the conduct described above. Plaintiff mailed her notice to Defendant via certified mail, return receipt requested, on August 31, 2012, which letters and USPS Certified Mail Receipts are attached as Exhibit 1. More than thirty (30) days have passed since Plaintiff provided written notice, and Defendant has failed to take any remedial steps to rectify its false, misleading and deceptive practices. Accordingly, Plaintiff seeks statutory and actual damages, as well as punitive damages, interest, and attorneys' fees as authorized by Section 1780(a) of the CLRA.

56. Pursuant to *California Civil Code* section 1780(a)(2) and (a)(5), Plaintiff also seeks injunctive relief in the form of an order of this Court that includes, but is not limited to, a directive requiring Defendant to correct its false, deceptive and misleading labeling, packaging and advertising representing the quantity of Sugar Lip Treatment contained in each tube to be .15 ounce or 4.3 grams.

57. Plaintiff also seeks equitable relief in the form of an order requiring Defendant to make full restitution to California purchasers of Sugar Lip Treatment,

1 | and other purchasers in the U.S. of Sugar Lip Treatment, of all monies wrongfully
2 | obtained as a result of the misconduct described herein.

3 | 58. Plaintiff and members of the Class may be irreparably harmed and/or
4 | denied an effective and complete remedy if such an order is not granted.

5 | 59. The unfair and deceptive acts and practices of Defendant, as described
6 | above, present a serious threat to Plaintiff and members of the Class.

### THIRD CAUSE OF ACTION

#### Unfair Competition
#### In Violation of California Business & Professions Code § 17200, et seq.

60. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

61. The UCL prohibits unfair competition which is defined as business practices that are (1) unlawful; (2) unfair; or (3) fraudulent. The acts of Defendant constitute unfair competition under each of these three provisions of the UCL.

62. Defendant's advertising, packaging, labeling, distributing and selling of Sugar Lip Treatment are *unlawful* for the following reasons:

> a. **Sherman Act:** The business practices violate California's Sherman Food, Drug and Cosmetics Law, *Cal. Health & Saf. Code* § 109875, et seq. (the "Sherman Law").
>
> > 1. The Sherman Law defines a "cosmetic" as any "article, or its components, intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to, the human body, or any part of the human body, for cleansing, beautifying, promoting attractiveness, or altering the appearance." *Cal. Health & Saf. Code* § 109900. Defendant's website states that Sugar Lip Treatment "is proven to provide 6 hours of significant

moisture for soft, supple, and youthful lips. The unique formula also offers buildable coverage to customize a sheer or rich hue." http://www.fresh.com/makeup/lip-care/sugar-coral-tinted-lip-treatment-spf15. Defendant's Sugar Lip Treatment falls within the Sherman Law's definition of a "cosmetic" and is, therefore, governed by its provisions.

2.  The Sherman Law declares that any cosmetic is misbranded if it is in package form and it does not bear a label containing an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count, or if its container is so made, formed, or filled as to be misleading. *Cal. Health & Saf. Code* §§ 111740 and 111750.

3.  The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing." *Cal. Health & Saf. Code § 109995*. Defendant is a corporation and, therefore, a "person" within the meaning of the Sherman Law.

4.  Because the labels appearing on Sugar Lip Treatment tubes and boxes contain inaccurate statements of the quantity of product in the tubes, they are misbranded, in violation of the Sherman Law. The unlawful misbranding

1  of Sugar Lip Treatment constitutes a violation of the
2  UCL.

3  b.  **CLRA:** The business practices alleged above are also unlawful
4  under the CLRA , which prohibits unfair deceptive acts or
5  practices which result in the sale of goods to a consumer, as
6  more fully described above.

7  c.  **FAL:** The business practices alleged above are also unlawful
8  under the California Business & Professions Code section
9  17500, *et. seq.*, which prohibits untrue and misleading
10  statements and falsely representing the quantity of a product by
11  advertisement, among other forms of false advertising.

12  d.  **"Slack Fill Statutes" (California Bus. & Prof. Code):** The
13  business practices alleged above also violate the UCL in that
14  they are unlawful under California Business & Professions Code
15  section 12602, which makes it unlawful for any person engaged
16  in the packaging or labeling of any commodity for distribution
17  or sale to distribute or to cause to be distributed any such
18  commodity if the commodity is contained in a package, or if
19  there is affixed to that commodity a label, with false or hollow
20  bottoms, nonfunctional slack fill, or otherwise deceptive
21  packaging so as to facilitate the perpetration of deception.

22  e.  The business practices alleged above also violate the UCL in
23  that they are unlawful under California Business & Professions
24  Code section 12606(a), which makes it unlawful for
25  commodities to be packed in such a way as to have a false
26  bottom, false sidewalls, false lid or covering, or be otherwise so
27  constructed or filled, wholly or partially, as to facilitate the
28  perpetration of deception.

f.     The business practices alleged above also violate the UCL in that they are unlawful under California Business & Professions Code section 12606(b), which provides that "No container shall be made, formed, or filled as to be misleading. A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill. Slack fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack fill is the empty space in a package that is filled to less than its capacity [other than for specified reasons]."In addition to violating the "unlawful" prong of the UCL, Defendant's advertising, packaging, labeling, distributing and selling of Sugar Lip Treatment violates the UCL because it constitutes an *unfair* business practice as the impact of the practice and the harm to consumers is outweighed by any countervailing benefits, justification and motives.

63.    In addition to violating the "unlawful" and "unfair" prongs of the UCL, Defendant's advertising, packaging, labeling, distributing and selling of Sugar Lip Treatment violates the UCL because it constitutes a *fraudulent* business practice as the public is likely to be deceived for the reasons described above.

64.    As a result of the business practices described above, Plaintiff and members of the Class suffered injury in fact measured by the money that they paid to purchase Sugar Lip Treatment, while only being able to consume 75% of what they believed to have purchased.

65.    Plaintiff and the Class, pursuant to California Business & Professions Code section 17203, are entitled to an order enjoining such future conduct on the part of Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any

money paid for Sugar Lip Treatment as a result of the wrongful conduct of Defendant.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

66.    Plaintiff re-alleges and incorporates the paragraphs above and incorporates such allegations by reference herein.

67.    As a result of Defendant's false, deceptive and misleading labeling, packaging, advertising, marketing, and sale of Sugar Lip Treatment, Defendant was unjustly enriched, at the expense of Plaintiff, and all others similarly situated, through the payment of the purchase price for Defendant's product.

68.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the members of the Class in light of the fact that the product purchased by Plaintiff and the members of the Class was not what Defendant represented it to be.  It would be unjust and inequitable for Defendant to retain such benefits without restitution to Plaintiff and the members of the Class for the monies paid to Defendant for such product.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff demands judgment as follows:

A.    For an order certifying the proposed Class herein under Fed. R. Civ. P. 23; appointing Plaintiff as representative of the Class; and appointing her undersigned counsel as Class counsel;

B.    For a declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C.    For an award of restitution pursuant to California Business & Professions Code sections 17203, 17535 and California Civil Code section 1780;

D.    For an award of disgorgement pursuant to California Business &

1    Professions Code sections 17203, 17535 and California Civil Code section 1780;

2         E.    For an order enjoining Defendant's unlawful and deceptive acts and

3    practices pursuant to California Business & Professions Code sections 17203,

4    17535 and California Civil Code section 1780;

5         F.    Monetary damages, including, but not limited to compensatory,

6    incidental or consequential damages in amounts to be determined at trial, together

7    with prejudgment interest at the maximum rate allowable by law with respect to the

8    common law claim alleged;

9         G.    Statutory damages in the maximum amount provided by law;

10        H.    Punitive damages in accordance with proof and in an amount

11   consistent with applicable precedent;

12        I.    For an order awarding Plaintiff and the Class members the reasonable

13   costs and expenses of suit, including their reasonable attorneys' fees; and

14        J.    For any further relief that the Court may deem appropriate.

15                           **JURY TRIAL DEMANDED**

16        Plaintiff hereby demands a trial by jury.

17        DATED this 25 day of March, 2013

18                                   SPRINGEL & FINK, LLP

19

20

21        By _____
             Adam H. Springel
22           Stephanie L. Millea

23                                   Attorneys for Plaintiff and the Proposed
                                     Class
24

25

26

27

28

                              CLASS ACTION COMPLAINT
                                      -26-

**EXHIBIT "1"**

**Springel & Fink**

ATTORNEYS AT LAW

WWW.SPRINGELFINK.COM

WRITER'S E-MAIL:

9TH FLOOR
COSTA MESA
CALIFORNIA 92626

TELEPHONE
(714) 957-5742

FACSIMILE
(714) 957-5762

PLEASE REPLY TO
☐ COSTA MESA, CA

SUITE 250
HENDERSON
NEVADA 89074

TELEPHONE
(702) 804-0706

FACSIMILE
(702) 804-0798

PLEASE REPLY TO
☐ HENDERSON, NV

August 31, 2012

## NOTICE OF VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT AND DEMAND FOR CORRECTIVE ACTION

Via Certified Mail Return Receipt Requested
7011 2970 0003 8728 5983; 7011 2970 0003 8728 5952;
7011 2970 0003 8728 5969; 7011 2970 0003 8728 5976;

Fresh, Inc.
3333 Bristol Street
Costa Mesa, California 92626
Attn: General Manager

California Secretary of State
1500 11th Street, 3rd Floor, Room 390
Sacramento, California 95814

Fresh, Inc.
c/o Corporation Service Company
80 State Street
Albany, New York 12207-2543

To Whom It May Concern:

Please take notice that the Sugar Lip Balm product line ("Sugar") created, designed, manufactured marketed, and distributed by Fresh, Inc. ("Fresh") violates the California Consumer Legal Remedies Act ("CRLA"), *California Civil Code* section 1750, et seq.

Sugar misleads and deceives consumers through the manner in which it is packaged, labeled, and marketed. Specifically, each Sugar product bears a label identifying the weight of the product as .15 ounces, the equivalent of 4.3 grams. However, only approximately 3.3 grams (76.7% of the advertised quantity) of Sugar is actually available to a consumer using any

reasonable means of extraction. Compounding the misleading and deceptive statement of the product's weight on its packaging, Sugar misleads and deceives reasonable consumers by coming in oversized boxes and in a tube that is unnecessarily large and heavy. As such, Sugar's claims of quantity are false and misleading.

Sugar is sold throughout California at prices ranging from approximately $22.50 plus tax, to $25 plus tax, for each Sugar container sold, rather than the approximately $17.25 to $19.18 per container Fresh should have received based on the actual product (3.3 grams) reasonably available for consumer use. This deceitful conduct has also caused repeat customers to purchase additional Sugar containers sooner than necessary, thereby repeating the cycle of overcharging consumers.

Defendants' deceptive conduct has been and continues to be undertaken in transactions intended to result in, and which have resulted in, the sale of goods to consumers. Such conduct constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and violates *Civil Code* sections 1770(a)(5) and (a)(9), which provide, in pertinent part:

"(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

(9) Advertising goods or services with intent not to sell them as advertised."

In reliance upon Fresh's deceptive conduct, Angela Ebner purchased Sugar at a Fresh store in Costa Mesa, California on August 9, 2012 for $22.50 plus sales tax. Angela Ebner, as well as all consumers similarly situated, have suffered injury as a result of Fresh's violation of the CLRA.

Notice of Violation and Demand for Corrective Action
August 31, 2012
Page 3


On behalf of Angela Ebner and all similarly situated consumers, we demand that Fresh take appropriate corrective action pursuant to *Civil Code* section 1782. Should you fail to take the necessary remedial steps within the statutory period, we will be compelled to take appropriate legal action.

Very truly yours,

SPRINGEL & FINK LLP

*/S/ Adam H. Springel*

Adam H. Springel


DORSEY & WHITNEY LLP

*/S/ Richard Silberbert*

Richard Silberberg
on behalf of Angela Ebner and
all similarly situated consumers

7011 2970 0003 8728 5952

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees $

Sent To
Street, Apt. No.;
or PO Box No.
City, State, ZIP+4

Fresh, Inc.
c/o Corporation Service Company dba CSC-
Lawyers Incorporating
2710 Gateway Oaks Drive, Suite 150N
Sacramento, California 95833-3502

PS Form 3800, August 2006

---

7011 2970 0003 8728 5983

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees $

Sent To
Street, Apt. No.;
or PO Box No.
City, State, ZIP+4

Fresh, Inc.
3333 Bristol Street
Costa Mesa, California 92626
Attn: General Manager

PS Form 3800, August 2006    See Reverse for Instructions

---

7011 2970 0003 8728 5969

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage

Sent To
Street, Apt. No.;
or PO Box No.
City, State, ZIP+4

Fresh, Inc.
c/o Corporation Service Company
80 State Street
Albany, New York 12207-2543

PS Form 3800, August 2006    See Reverse for Instructions

---

7011 2970 0003 8728 5976

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage

Sent To
Street, Apt. No.;
or PO Box No.
City, State, ZIP+4

California Secretary of State
1500 11th Street, 3rd Floor, Room 390
Sacramento, California 95814

PS Form 3800, August 2006    See Reverse for Instructions

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

## SACV13- 477 JVS (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
    **312 N. Spring St., Rm. G-8**
    **Los Angeles, CA 90012**

[✓] **Southern Division**
    **411 West Fourth St., Rm. 1-053**
    **Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
    **3470 Twelfth St., Rm. 134**
    **Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| ANGELA EBNER | FRESH INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Adam H. Springel and Stephanie L. Millea,<br>SPRINGEL & FINK LLP<br>535 Anton Boulevard, 9th Floor, Costa Mesa, California 92626<br>Telephone: (714) 957-5742 // Facsimile: (714) 957-5762 | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Stephen R. Smerek, Winston & Strawn LLP<br>333 S. Grand Avenue, Los Angeles, CA 90071-1543<br>Telephone: (213) 615-1735 // Facsimile: (213) 615-1750 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC Sec. 1332, 28 USC Sec. 1441

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:**<br>☐ 463 Alien Detainee | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 510 Motions to Vacate Sentence | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 530 General | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS**<br>**PERSONAL PROPERTY** | ☐ 535 Death Penalty | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY**<br>☐ 310 Airplane | ☐ 370 Other Fraud | **Other:**<br>☐ 540 Mandamus/Other | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 340 Marine | **BANKRUPTCY** | **FORFEITURE/PENALTY** | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY**<br>☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| | | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: _____ SACV13-0477

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Delaware |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
NOTE: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: 3/25/13

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |